## GENERAL PARTNERSHIP AGREEMENT

**THIS AGREEMENT** is made as of August 1, 2014 by and between the undersigned parties (collectively, the **"Partners"**) upon the following terms and conditions:

### Background

The Partners hereto desire to form a General Partnership among themselves for the purposes hereinafter stated, subject to the terms and conditions hereof.

### FORMATION OF PARTNERSHIP

.01     **Formation.** The Partners hereto hereby enter into a General Partnership (the **"Partnership"**).

.02     **Name.** The name of the Partnership shall be **Advanced Modular Concepts, LLC** or such other name as may hereafter be chosen from time to time as agreed by the Partners.

.03     **Fictitious Name Registration.** The parties hereto shall execute and file in the appropriate places all instruments and documents which shall be necessary for the purpose of complying with any applicable fictitious name act or assumed name act.

.04     **Principal Place of Business.** The principal place of business of the Partnership shall be located at **595 Zenith Road, Nescopeck, PA 18635-1812** or at such other place or places as the Partners may agree from time to time. The Partnership may maintain such other offices and places of business as the Partners may from time to time deem advisable.

.05     **Term.** The term of the Partnership shall commence upon the date hereof and shall continue until December 31, 2114, unless the Partnership is sooner dissolved in accordance with the provisions of this Agreement.

### 2.0 PURPOSES AND BUSINESS OF THE PARTNERSHIP

2.01     **Purposes of the Partnership.** Notwithstanding any provision hereof to the contrary, the nature of the business and of the purposes to be conducted and promoted by the Partnership is to engage solely in the following activities:

(a) to market, sell and construct multi-family and commercial projects and turn-key services utilizing modular manufacturing technology and/or conventional construction techniques and to execute, deliver and perform any and all agreements or obligations relating thereto;

(b) to provide modular erection services to modular manufacturers and builders of single-family, multi-family and commercial structures.

(c) to take any and all other action necessary to maintain the existence of the Partnership as a General Partnership in good standing under the laws of the Commonwealth of Pennsylvania; and

(d) to engage in any lawful acts or activities and to exercise any powers as may be agreed by the Partners from time to time.

EXHIBIT

A

2.02   Authority of the Partnership. In order to carry out its purpose, and not in limitation thereof, the Partners shall mutually agree on the following before making any commitments on behalf of the Partnership:

    (a) engage in any kind of activity, and perform and carry out contracts of any kind necessary to, or in connection with, or incidental to, the accomplishment of the purposes of the Partnership;

    (b) borrow money and issue evidences of indebtedness in furtherance of the Partnership business and secure any such indebtedness by mortgage, security interest or other lien, any or all of which debt instruments may contain confessions of judgement against the Partnership if the Partners consent thereto;

    (c) maintain and operate the Partnership's assets;

    (d) negotiate for and conclude agreements for the sale, exchange or other disposition of all or any part of the property of the Partnership; and

    (e) hire and compensate employees, agents, independent contractors, attorneys and accountants.

2.03   Conduct of the Partnership. Except as otherwise provided in the Agreement, all decisions as to the management of the business of the Partnership shall be made by mutual agreement of the Partners. The Partners shall receive no compensation for their services hereunder except as mutually agreed upon, but shall be reimbursed for their reasonable out-of-pocket expenses incurred in connection with the business of the Partnership upon presentation of receipts or other satisfactory evidence in support thereof, Notwithstanding the foregoing, the sale or refinancing of the Property, and any cash distributions by the Partnership, will require the mutual consent of the Partners.

2.04   Other Activities. Any of the Partners may engage in other business ventures of every nature and description, independently or with others, as long as such ventures are not competitive (do not hinder or interfere) with the Partnership's business unless agreed to otherwise by the Partners. Neither the Partnership nor any other Partners shall, by virtue of their interest in the Partnership, have any rights in or to such ventures or the income or profits derived from them.

### 3.0 PARTNERS CAPITAL CONTRIBUTIONS; PARTNERS PERCENTAGE INTERESTS

3.01   Partner's Capital Contributions. Upon the execution of the Agreement, the Partners agree that they have each made zero dollars ($0.00) in capital contributions to the Partnership. Within 7 days of execution of this agreement, each partner shall make contributions as follows: Jeff McCreary shall contribute $10,000.00 cash. A cash amount of $3,400.00 previously loaned to but not repaid by Brian Brockway shall be debited against the total contribution. Brian Brockway shall contribute a 2005 Jeep Grand Cherokee Limited with a current retail value of approximately $10,000.00. Therefore, each partner shall have made an initial contribution of $10,000.00 to the partnership.

3.02   Return of Capital Contributions. Except as specifically provided in the Agreement, no Partner shall be entitled to demand or receive the return of any capital contribution to the Partnership. Upon dissolution and liquidation of the



Partnership, the Partners shall look solely to the Partnership assets for the return of their capital contributions, and no Partner shall be liable for such return, even if such assets are sufficient to return the full amount of such capital contributions.

3.03   Interest in the Partnership. The Partners shall have the following percentage interests (A Percentage Interests) in the Partnership, and all references herein to a Partner's interest, or proportionate share shall, unless otherwise stated, refer to the Partner's percentage participation in the Partnership as set forth in this section 3.03.

| Partner | Percentage Interest |
|---|---|
| Jeffrey McCreary<br>595 Zenith Road<br>Nescopeck, PA 18635 | 50% |
| Brian Brockway<br>3863 Smith Street<br>Bloomsburg, PA 17815 | 50% |

TOTAL   100%

3.04   Additional Contributions. The Partners shall contribute additional capital to the Partnership in amounts mutually agreed by the Partners to pay Partnership debts, meet Partnership obligations, or carry on the business of the Partnership. Additional contributions by the Partners shall be made equally.

## 4.0 ALLOCATIONS AND DISTRIBUTIONS

4.01   Net Income or Net Loss. "Net Income" and "Net Loss" means, for each fiscal year or other period, an amount equal to the Partnership's taxable income or loss for such year or period, as determined by the Partnership's accountants.

4.02   Allocation of Net Income. Net Income of the Partnership for each fiscal year shall be determined with the accounting methods followed by the Partnership for Federal Income Tax purposes and shall be allocated in the following order of priority:

    (a) To the extent of any Net Loss previously allocated to the Partners, to the Partners in the same proportion as such Net Loss was previously allocated;

    (b) To the extent of the aggregate amount of the negative balances in their Capital Accounts after the above allocations, to the Partners having negative balances in their Capital Accounts in proportion to the amount of each Partner's negative balance; and

    (c) In excess of the amounts allocated above, in accordance with the Partner's Percentage Interests.

    (d) The requirements of Treasury Regulation Section 1.704-1(b)(4)(iv), relating to allocations of losses attributable to nonrecourse debt and the provisions for a "minimum gain charge-back" in addition to the requirements of Treasury Regulation Section 1.704-1(b)(2)(ii)(d), relating to a "qualified income off-set", are incorporated herein and made a part of this Agreement by reference.



4.03    Allocation of Net Loss. Net Loss shall be determined in accordance with the accounting methods followed by the Partnership for Federal Income Tax purposes and shall be allocated in accordance with the Outstanding Capital Contributions of all the Partners.

4.04    Distribution of Net Cash Flow.

    (a) Distibution of Net Cash Flow. Net Cash Flow, if any, realized by or available to the Partnership shall be distributed in cash to the Partners as follows:

        (i)    First, to the Partners and their affiliates, in proportion to the respective amounts of loans then due by the Partnership to such Partners and affiliates.

        (ii)    Second, to each Partner, in accordance with their respective Percentage Interests in the Partnership.

    (b) The term "Net Cash Flow" means, for any fiscal year and with respect to any period, all cash receipts of the Partnership during such period less the following: (a) operating expenses or other expenditures in connection with the conduct of the Partnership's business made during such period, (b) professional fees and expenses incurred by the Partnership in connection with the conduct of its business, (c) debt service paid on any indebtedness of the Partnership, and (d) additions to such other reserves and/or deductions as the Partners shall mutually agree to be necessary or advisable for the conduct of the business of the Partnership.

    (c) Timing of Distributions.  Distributions of the Net Cash Flow shall be distributed on a basis no less frequently than quarterly. In determining the amount of distributions, the Partners shall, in their reasonable judgment, establish Reserves for working capital, maintenance, repairs, capital expenditures or other items in satisfaction of liabilities (including, without limitation, contingent liabilities) as they come due or may come due.

4.05    Taxes Withheld. Each Partner shall be individually responsible for payment of taxes due on any distribution made to them.

4.06    Allocations and Distributions with Respect to Interests Transferred. If an interest in the Partnership is transferred in accordance with Article VIII hereof, there shall be allocated to each Partner who held the transferred interest during the fiscal year of transfer the product of (a) the Partnership's Net Income of Net Loss allocable to such transferred interest for such fiscal year and (b) a fraction, the numerator of which is the number of days such Partner held the transferred interest during such fiscal year and the denominator of which is the total number of days in the fiscal year.

## 5.0 TRANSFERS OF PARTNERSHIP INTERESTS

5.01    Restrictions on Transfer of Partnership Interests.

    (a) Except as provided in this Article V and except for transfers arising by reason of death, no Partner shall sell, assign, hypothecate or otherwise dispose of his or its interest or any part thereof in the Partnership without the written consent of the other Partner.





(b) The Partners agree that, should there be a transfer of Ownership Interests prior to December 31, 2015, the valuation of the Partnership shall be $0.00.

5.02 <u>Transfer of Partnership Interest through Disability or Death.</u>

(a) The Partnership shall procure and maintain Insurance Policies, to provide for a disabled Partner or deceased Partner's survivors, equal to, or greater than the Partnership's assets. Said policy(s) shall be paid in full by the Partnership. This policy(s) shall be used to "buy out" the disabled or deceased Partner's Ownership Interests in full.

(b) In the event that either of the Partner's are found to be un-insurable for the policy(s) described in 5.02(a), then upon the disability or death of a Partner (the "Disabled Partner"), the Disabled Partner shall forfeit one percent (1%) of the Disabled Partner's Ownership Interest in the Partnership, thus giving the remaining Partner a 51% Ownership Interest. The Disabled Partner and/or his estate shall continue to receive the Disabled Partner's (49%) share of profits generated by the Partnership. In addition, the Disabled Partner and/or his estate shall continue to receive regular wages for thirteen (13) weeks beyond the date of disability or death. However, wages will not be paid beyond the initial thirteen (13) week period.

5.03 <u>Right of First Refusal.</u> In addition to the transfers described in 5.01 and 5.02 above, a Partner may sell all or any portion of his interest in the Partnership (the "Interests") pursuant to a bona fide, written offer (an "Offer") from one or more third parties (the "Offerors(s)"); provided however, as follows:

(a) The Partner proposing to sell its Interests (the "Selling Partner") shall "forfeit" to the other Partners (the "Remaining Partners"), one (1-3/4%) percent each of the Selling Partner's ownership interest in the Partnership, thus giving the Remaining Partners a thirty-five (35%) percent ownership interest. This forfeit shall coincide with the exchange of Ownership Interests.

(b) The Partner proposing to sell its Interests shall give the other Partner a copy of the Offer and written notice of the Selling Partner's intention to sell, identifying the Offeror(s) and setting forth the date of the Offer, the amount of Interests to be sold, and the proposed price and other terms of payment (the "Notice of Proposed Sale").

(c) The Selling Partner hereby grants to the Partnership and to the Remaining Partners the right and option (the "**Right of First Refusal**") to acquire in the aggregate all (but, unless otherwise agreed by the Selling Partner, not less than all) of the Interests subject to the offer, on terms and conditions equivalent to those set forth in the Offer; provided, however, that the price to be paid by the Partnership and to the Remaining Partners will be fifteen percent (15%) less than the price described in the Offer.

(d) The Right of First Refusal shall be exercisable by the Remaining Partner, by written notice given within thirty (30) days after the date of the Notice of Proposed Sale (the "**Partnership Exercise Period**") to the Selling Partner, such notice specifying the number of shares to be purchased (the "**Partnership Notice**"). If the Remaining Partners do not so deliver the Partnership Notice within the Partnership Exercise Period, the Remaining



Partners shall be deemed to have declined to exercise the First Right of Refusal.

(e) Transfer to Offeror. If the Right of First Refusal is not exercised as provided in this Agreement, or if exercised by the Remaining Partners for less than all of the Interests subject to the Offer, the Selling Partner may sell all of the Interests subject to the Offer within sixty (60) days after the close of the Partnership Exercise Period, but only to the Offeror(s) named in, and only on the same terms and conditions set forth in, the Notice of Proposed Sale; provided, however, that (i) any and all transferees of a Selling Partner's Interests pursuant to this paragraph shall be bound by the terms of this Agreement and shall execute any and all instruments necessary so to confirm; and (ii) any and all Interests transferred by the Selling Partner shall be subject to this Agreement from and after the date of transfer. After the expiration of such sixty (60) day period, the Selling Shareholder shall not transfer any Interests without again complying with the provisions of this Agreement.

5.04    Mandatory Redemption. Partnership Purchase.

(a) Upon the occurrence of any of the following events (each, a **"Redemption Event"**), all of the Interests in the Partnership of a Partner with respect to whom such event occurs (the **"Redemption Interests"**), at the election of such Partner or his legal representative (or his estate in the case of death) (collectively, the Affected Partner"), shall be purchased by the Partnership in accordance with the terms of this Section 5.03:

> (1) Such Partner is adjudicated incompetent by a court of competent jurisdiction; or
> (2) Such Partner dies.

(b) The purchase price (the **"Purchase Price"**) for the Redemption of Interests will be the value determined according to the method set forth in Section 5.03(c) below. The Purchase Price shall be payable in five (5) equal annual installments or, at the option of the Remaining Partner, may be paid earlier in which event a discount factor of twenty percent (20%) will be applied to the then outstanding balance of the Purchase Price.

(c) The Purchase Price shall be determined by a nationally recognized business appraisal firm ("Appraisal Firm") selected with the consent of all of the Partners, including the Affected Partner or his legal representative or estate. In the event that the Partners are unable for any reason to select an Appraisal Firm, then the Affected Partner and the non-Affected Partner shall each select an agent for the purpose of selecting an Appraisal Firm and, within ten days thereafter, the two agents selected shall choose an Appraisal Firm. In the event that the two agents chosen cannot agree upon an Appraisal Firm, the Philadelphia, Pennsylvania office of the American Arbitration Association shall be requested to select an Appraisal Firm and this request may be made by either of the agents. The decisions of the American Arbitration Association and the Appraisal Firm selected in accordance with this provision shall be final, conclusive and binding upon the parties.



(d) A settlement (the "**Settlement**") for the transfer of the Redemption Interests shall be held at the Partnership's offices at a time and date fixed by the Partnership upon not less than ten (10) days notice to the Affected Partner. Upon Settlement, all loans, advances, and exchange accounts of any nature whatsoever between the Partnership and the Affected Partner, whether owing to or by the Partnership, will become immediately due and payable.

## 6.0 TERMINATION OF THE PARTNERSHIP

6.01    Dissolution. The Partnership shall dissolve upon, but not before, a mutual written agreement of the Partners to dissolve the Partnership.

6.02    Winding Up and Distributions. In the event of a dissolution of the Partnership, the assets of the Partnership shall be liquidated and, after Partnership obligations have been discharged or provided for, and any reserves which the Partners deem reasonably necessary to provide for contingent and unforeseen liabilities or obligations of the Partnership have been established, the net proceeds of such liquidation shall be distributed in accordance with Section 4.01.

## 7.0 BOOKS, RECORDS AND TAX RECORDS

7.01    Books and Records. The Partners shall cause to be kept full and accurate books of the Partnership. All books and records of the Partnership shall be kept at the Partnership's principal office or mutually agreed location and shall be available at reasonable times for inspection and copying by the Partners or their duly authorized representatives. The books of the Partnership shall be kept on the accrual basis, and the fiscal period of the Partnership shall be the calendar year. Capital Accounts for each Partner shall be maintained as part of the books of the Partnership and the amount of profits or losses of the Partnership, as well as capital contributions to the Partnership, and distributions from the Partnership, shall be credited or charged, as the case may be, to the Capital Account of each Partner. Reports of Partnership income shall be submitted to the Partners not less frequently than annually. Each of the Partners shall have the right to inspect Partnership files, records or books at reasonable times.

7.02    Capital Accounts. No Partner shall have any obligation to eliminate a deficit balance in his Capital Account at any time, or bring his Capital Account into any particular parity with any other Partner's Capital Account at any time, although this sentence shall not limit a Partner's obligations pursuant to other sections of this Agreement. No Partner shall have any obligation to make up any deficit balance in any Partner's Capital Account.

7.03    Tax Returns. The Partners shall mutually cause to be prepared and timely filed with appropriate Federal, State and Local regulatory and administrative bodies all tax returns and other reports required to be filed by the Partnership with such entities under the then current and applicable laws, rules and regulations. Such tax returns and other reports shall be prepared on the accounting or reporting basis required by such regulatory bodies. Copies of such tax returns, as filed, shall be sent to each Partner.

7.04    Accountant. The independent certified public accountants of the Partnership shall be such firm of consultants as shall be selected mutually by the Partners.



## 8.0 GENERAL PROVISIONS

8.01   Amendments. No amendment of this Agreement shall be binding unless such amendment is proposed in writing, and the written mutual consent of the Partners is obtained with respect thereto.

8.02   Indulgences, Etc. Neither the failure nor any delay on the part of any party hereto to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

8.03   Controlling Law. This Agreement and all questions relating to its validity, interpretation, performance and enforcement, shall be governed by and construed in accordance with the substantive laws of the Commonwealth of Pennsylvania, notwithstanding any conflict-of-law provisions to the contrary.

8.04   Notices. All notices, requests, demands and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given, made and received only when delivered (personally, by facsimile, or by courier service such as Federal Express, or by other messenger) or three days after deposit in the United States mails, registered or certified mail, postage prepaid, return receipt requested, addressed to the Partners at the addresses listed in Section 3.03 herein, or such other address as any Partner shall advise the other Partners by written notice given in accordance with this Section 8.04.

8.05   Binding Nature of Agreement. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns, except that no party may assign or transfer its rights or obligations under this Agreement in any manner other than as provided in this Agreement.

8.06   Execution in Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

8.07   Provisions Separable. The provisions of this Agreement are independent of and separable from each other, and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

8.08    Entire Agreement. This Agreement contains the entire understanding among the
parties hereto with respect to the subject matter hereof, and supersedes all prior
and contemporaneous agreements and understandings, inducements or conditions,
express or implied, oral or written, except as herein contained. The express terms
hereof control and supersede any course of performance and/or usage of the trade
inconsistent with any of the terms hereof. This Agreement may not be modified or
amended other than by an agreement in writing by the Partners.

8.09    Paragraph Headings. The paragraph headings in this Agreement are for
convenience only; they form no part of this Agreement and shall not affect its
interpretation.

8.10    Gender, Etc. Words used herein, regardless of the number and gender specifically
used, shall be deemed and construed to include any other number, singular or
plural, and any other gender, masculine, feminine or neuter, as the context
requires.

8.11    Number of Days. In computing the number of days for purposes of this
Agreement, all days shall be counted, including Saturdays, Sundays and holidays;
provided, however, that if the final day of any time period falls on a Saturday,
Sunday or holiday, then the final day shall be deemed to be the next day which is
not a Saturday, Sunday or holiday.

8.12    Interpretation. No provision of this Agreement is to be interpreted for or against
either party because that party or that party's legal representative or counsel
drafted such provision.

8.13    Entity Authority. Any entity signing this Agreement represents and warrants that
the execution, delivery and performance of this Agreement by such entity has
been duly authorized by all necessary action and is valid and binding upon such
entity.

8.14    No Third Party Beneficiaries. Notwithstanding anything to the contrary contained
herein, except as otherwise expressly provided for herein, no provision of this
Agreement is intended to benefit any party other than the Partnership, the
signatories hereto and their permitted successors and assigns nor shall any such
provision be enforceable by any other party.

8.15    Waiver of Partition. Each party does hereby waive any right to partition or the
right to take any other action which might otherwise be available to such party
outside of the provisions of this Agreement for the purpose of severing his or its
relationship with the Partnership or such party's interest in the property held by
the Partnership from the interests of the other parties until the end of the term of
both this Partnership and any successor partnership formed pursuant to the terms
hereof.



IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first above written.

GENERAL PARTNER:

Jeffrey McCreary

GENERAL PARTNER:

Brian Brockway



Corporations ▾   Search Business Entities (corpsearch.aspx)   Search UCC Transactions (uccsearch.aspx)   Forms ▾

Contact Corporations (http://www.dos.pa.gov/BusinessCharities/Pages/default.aspx)

Login (../Account/ValidateUser)

Register (../Account/Register_account)

Search entity / Select entity / Order documents

## Order Business Documents

### Business Name History

| Name | | Date: 10/02/2017 |
|---|---|---|
| ADVANCED MODULAR CONCEPTS, LLC | Name Type | |
| | Current Name | |

#### Business Entity Details

**Officers**

| Name | ADVANCED MODULAR CONCEPTS, LLC |
|---|---|
| Entity Number | 4291518 |
| Entity Type | Limited Liability Company |
| Status | Active |
| Citizenship | Domestic |
| Entity Creation Date | 09/02/2014 |
| Effective Date | 09/02/2014 |
| State Of Inc | PA |
| Address | 7260 Old Berwick Road Bloomsburg PA 17815 Columbia |

### Filed Documents

The information presented below is for your reference. To place an order you will need to log in. If you do not have a PENN File account, you may register for an account by clicking here (/Account/Register_account).

Show 25 ▾ entries

Filter Records

| Select | Date | Document | Pages | Plain Copy Quantity# | Price | Certified Copy Quantity# | Certified Copy Price | Microfilm # | Microfilm Start | Microfilm End | Line Tota |
|---|---|---|---|---|---|---|---|---|---|---|---|

EXHIBIT

B

10/2/2017

Page 2 of 2

| Select | Date | Document | Pages | Plain Copy Quantity# | Price | Certified Copy Quantity# | Certified Copy Price | Microfilm # | Microfilm Start | Microfilm End | Line Tota |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | 09/02/2014 | Certificate of Organization 1 | 2 | 1 | $3.00 | 0 | $40.00 | | | | |
| ☐ | 09/23/2016 | Statement or Certificate of Change of Registered Office for Domestic Business Corporation (1507) 2 | 1 | 1 | $3.00 | 0 | $40.00 | | | | |

Showing 1 to 2 of 2 entries

| ☐ | All Dates | All Certified Copies | 3 | Quantity # | 1 | $49.00 | | Previous | 1 | Next |
|---|---|---|---|---|---|---|---|---|---|---|

## Certified Documents

| Select | Date | Document | Pages | | Quantity# | Price | Line Total |
|---|---|---|---|---|---|---|---|
| ☐ | 10/02/2017 | Subsistence Certificate | 1 | | 1 | $40.00 | |
| ☐ | 10/02/2017 | Index and Docketing Report | 1 | | 1 | $15.00 | |
| ☐ | 10/02/2017 | Index and Docketing Certified Report | 1 | | 1 | $55.00 | |

Order Total :

<< Back to Search Results

Login

10/2/2017

From: **Brian Brockway** brianb.mabs@gmail.com
Subject: **Fwd: Advanced Modular Concepts Equipment Sold to AMC Builders**
Date: **May 11, 2018 at 5:18:05 PM**
To: **Frank Kepner** Frankk@kkclaw.com

---

Please call to discuss

---------- Forwarded message ---------
From: Jeff McCreary <jeffm.amc@gmail.com>
Date: Fri, May 11, 2018, 5:10 PM
Subject: Advanced Modular Concepts Equipment Sold to AMC Builders
To: <BrianB.MABS@gmail.com>, Brian Brockway <BrianB.AMC@gmail.com>,
Brockway, Brian <BrianB.modsets@gmail.com>, Brian Brockway
<brianbrockway.modsets@gmail.com>

Brian,

Please be advised that on May 1, 2018, I sold the 2005 Ford F-350, 2004 22'
Enclosed Trailer and all equipment inventory to AMC Builders to offset debt
that AMC Builders has been carrying on Advanced Modular Concepts behalf
for up to 7 months. As of May 1, 2018, title to the those vehicles and
equipment that you took into your personal possession on September 25,
2017 have been transferred to AMC Builders. Therefore, the vehicles and
equipment that you are in possession of are legally owned by AMC Builders.
The State has been made aware of these changes and the registrations that
you have are no longer valid.

With this in mind, I am requesting that you return these vehicles and all
equipment in their proper working order, without being sabotaged or damaged
by 10:00 a.m. on Monday, May 14th to the address of 7260 Old Berwick Road
where we will review and inventory everything.



In the event you do not comply with this request, all items will be reported as

stolen. I will also be notifying your insurance company that this equipment is stolen.

Sincerely,


**Jeff McCreary, President**

Advanced Modular Concepts
7260 Old Berwick Road, Bloomsburg, PA 17815
570-759-1350; x-700
E: JeffM.AMC@gmail.com
W: www.AMC-Modular.com



**Jeff McCreary**
November 3 at 1:27 PM · Twitter · 🌐

Find your next great career opportunity at Advanced Modular Concepts

**Careers at Advanced Modular Concepts**
Find your next great career opportunity at Advanced Modular Concepts
indeedjobs.com

4 Shares

↱ Share

**About**
🤵 Married
📍 From Nescopeck, Pennsylvania
🎂 Born on May 6, 1963

**Friends**

**Christine Powlus**
Works at Berwick Area School...
60 Mutual Friends

**Greg N-Jessica Martz**
Berwick, Pennsylvania
27 Mutual Friends

**Sonny Kelchner**
Director of Construction at Ad...
19 Mutual Friends

**Angel Aten**
Packer/Inspector at Autoneum...
48 Mutual Friends

See More

News Feed   Requests   Notifications   More

EXHIBIT
D



OCT 1 8 2017

ADVANCED MODULAR CONCEPTS,  :  IN THE COURT OF COMMON PLEAS
LLC AND JEFF MCCREARY,      :  OF THE 26TH JUDICIAL DISTRICT
            Plaintiffs      :      OF PENNSYLVANIA
        VS                  :  COLUMBIA COUNTY BRANCH
BRIAN BROCKWAY, HEATHER      :  CIVIL ACTION-LAW
BROCKWAY AND SAMUEL T. BAILEY:
            Defendants      :  NO. 1102 OF 2017

APPEARANCES:
    JONATHAN S. COMITZ, ESQUIRE, Attorney for Plaintiffs.
    FRANKLIN KEPNER, JR., ESQUIRE, Attorney for
    Defendants.

## STIPULATION

        Upon discussion and agreement of the parties in this
case, they agree to the following terms and conditions:

        1.    The Defendants shall return two lap top computers
and a desk top tower currently in their possession.

        2.    The Defendants shall return what are called
template contracts or contract templates.

        3.    The Defendants shall return project pipeline
reports.

        4.    The Defendants shall return E-mail account
passwords.

        5.    It is understood that the Plaintiffs have also
requested hard copy payroll records from the years 2014, 2015
and 2016, and it has been represented to the Plaintiffs by the
Defendants that those records are not in possession of any of



EXHIBIT
F

/12/17

the Defendants.

     6.  The Plaintiffs have requested keys to two vehicles.  One is a Ford Excursion, the other a Sterling truck.  It has been represented to Plaintiffs through counsel for the Defendants that they are not in possession of those keys.  The Defendants have agreed to return a Ford Bronco and they shall park that vehicle on Vandine Street.  In exchange, Plaintiffs shall turn over to the Defendants the personal job box of Brian Brockway and the personal engine hoist of Brian Brockway.

     7.  The parties agree, until otherwise modified by Court Order, that they will mutually agree to a non-disparagement provision.

     8.  The parties shall, through their attorneys, coordinate the date and time for the delivery of all of these items of personal property and intellectual property with the time not to exceed five days.

     9.  Each party shall keep the property that they have in their possession until further Order of Court or agreement of the parties.

     10.  The trucks and trailers that are currently titled under the company's name, whichever entity is now using them shall procure the necessary insurance forthwith.

     11.  It is agreed that all of these terms are not subject to any prejudice going forward in terms of claims of

ownership in any of this property.

## ORDER OF COURT

AND NOW, to wit, this 9th day of October, 2017, the above stipulation is approved by this Court and the parties are DIRECTED to comply with the terms thereof.

BY THE COURT,

HONORABLE THOMAS A. JAMES, JR., P.J.

10/12/17